Elsie Boettcher v. Commissioner. Alvin W. Boettcher v. Commissioner.
Boettcher v. Commissioner
Docket Nos. 54897, 60139.
United States Tax Court
T.C. Memo 1956-267; 1956 Tax Ct. Memo LEXIS 25; 15 T.C.M. (CCH) 1400; T.C.M. (RIA) 56267; November 30, 1956
*25 Allen G. Gartner, Esq., and Edward I. Sproull, C.P.A., 41 East 42nd Street, New York, N. Y., for the petitioners. Charles M. Greenspan, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined deficiencies in income tax and additions to tax for fraud as follows: Additions
Year
Petitioner
Tax
to Tax
1946
Alvin W. Boettcher
$18,273.32
$ 9,136.66
1947
Alvin W. Boettcher
21,925.39
10,962.70
1946
Elsie Boettcher
4,022.34
2,011.17
1947
Elsie Boettcher
7,065.24
3,532.62 By amended answer, respondent claimed additional liabilities for tax and additions to tax of Alvin W. Boettcher of: Additions
Year
Tax
to tax
1946
$ 9,113.54
$4,556.77
1947
12,634.56
6,317.28 making totals of: Additions
Year
Tax
to tax
1946
$27,386.86
$13,693.43
1947
34,559.95
17,279.98
The deficiencies are based on disallowed deductions and alleged omissions from income of A. W. Boettcher Co., a partnership owned 60 per cent by petitioner Alvin W. Boettcher and 40 per cent by petitioner Elsie Boettcher. The *26 disallowed deductions are not disputed. Respondent concedes that no deficiencies based on omissions from income, nor any additions for fraud, are due from Elsie Boettcher. Respondent further concedes that there are no deficiencies against Elsie Boettcher, presumably because she reported 50 per cent of the partnership income rather than the correct 40 per cent. Respondent also concedes that no additions for fraud are due from Alvin W. Boettcher if there is no deficiency based on omissions from income. The remaining issues are whether Alvin W. Boettcher received additional cash payments from a customer during 1946 and 1947, and whether his failure to report those payments was due to fraud with intent to evade tax. Findings of Fact Some facts are stipulated and are hereby found. Alvin W. Boettcher, hereafter referred to as petitioner, who now resides in Palm Beach, Florida, and Elsie Boettcher, who still resides in Bronx County, New York, each filed their 1946 and 1947 income tax returns with the collector of internal revenue for the fourteenth district of New York. They were husband and wife during 1946 and 1947, separated in 1951, and were divorced in 1955. Petitioner worked *27 as a mechanic, service manager, and automobile salesman before becoming an automobile dealer in 1927. In 1933 he purchased part interest in a franchised Dodge-Plymouth agency. In 1939 he obtained full ownership and operated it as A. W. Boettcher, Inc., until selling out in December, 1953. During 1946 and 1947 petitioner and Elsie operated, as partners, A. W. Boettcher Co., a used-car sales and auto service business, hereafter referred to as the partnership. The partnership purchased used cars from the corporation at the trade-in price which the latter allowed in selling a new car. Petitioner personally set the sale price on cars sold by the partnership. It maintained no sales organization and sold its cars to another dealer. Until November 10, 1946, the O.P.A. imposed ceiling prices on used-car sales. Petitioner familiarized himself with the price regulations. He served on a local O.P.A. advisory committee. He also maintained membership in the National Automobile Dealers Association. The demand for automobiles during 1946 and 1947 exceeded the supply, due to the wartime interruption of production. The partnership sold at wholesale 148 and 197 used cars during 1946 and 1947, *28 respectively, to G. & H. Auto Sales Co., hereafter called G. & H., a partnership composed of Emanuel and Milton Heim. Emanuel, a used-car buyer since 1931, started G. & H. in 1945. In March 1946 it began buying cars from petitioner, whom Emanuel had known since about 1938 or 1939. New automobiles were again produced in 1946. A G. & H. buyer selected cars from the partnership. After considering condition of each car and, prior to removal of controls, O.P.A. ceiling price, the buyer and the partnership determined a price. The partnership prepared a sales contract and an invoice and, during the price control period, the appropriate O.P.A. form. G. & H. bought these cars "as is," without warranty or service arrangement. G. & H. delivered a check in the invoice amount to the partnership when it took delivery of the cars. The partnership deposited the check in its bank account. An internal revenue agent made a partial check of the G. & H. records. The agent examined only the G. & H. purchase records, cash disbursements book, and canceled checks. In his investigation he accepted Milton's assertions that certain checks represented amounts paid to petitioner in cash. The agent did not conduct *29 a general audit of G. & H., i.e., examine its general ledger or income tax returns. The agent did not verify the claimed overages. He listed the indicated checks and the purchases to which they purportedly pertained. Those checks totaled $30,047 for 1946, and $40,295 for 1947. During 1946 and 1947 G. & H. drew checks payable to the partnership for the invoice prices of cars bought and others, generally payable to "cash," petitioner, or Carolyn Heim, Milton's wife. G. & H. cashed most of the latter checks, regardless of payee. Petitioner never endorsed any of these checks, nor did he authorize Milton or Emanuel to sign his name. The accounts to which the "overage" checks were charged in the G. & H. cash disbursements book do not agree with the payees on the checks. Prior to November 10, 1946, the book showed charges to "loan," "exchange," "floor plan," and "purchases." For the remainder of 1946 and 1947 all charges were to "purchases." Two checks, claimed by G. & H. to be "overage" checks, naming Dukes Auto Repairs as payee were endorsed with that name, one being marked "For deposit G. & H. Auto Sales Co." and cleared that same day. Another named Reliable Auto Painting as payee *30 and was endorsed by "Harry Gross, Prop." for that firm. One "overage" check named Carolyn Heim payee, but was endorsed "Riverside Motors, Mike Puccio." Another payable to Carolyn bore the endorsements of Chas. Young and Ben Rodney. One "overage" check was payable to Atlantic Auto Radiator Works and endorsed by "Nathan Snider, Prop." for that concern. One check payable to cash was endorsed Seymour Louis Lubliner and an illegible signature. One check payable to "cash" bore the endorsement "For deposit G. & H. Auto Sales" and cleared the same day it was drawn. Beginning November 12, 1946 all checks were payable to and endorsed with petitioner's name except the last three in December 1947, which were payable to "cash." The partnership reported as income the total of the invoice prices of used-car sales to G. & H. during 1946 and 1947. Petitioner reported 50 per cent of the partnership profits in his individual tax returns. Neither the partnership nor petitioner received income from sales of used cars during 1946 or 1947 in excess of the invoice prices as reported. Petitioner did not fraudulently fail to report income with intent to evade tax. Opinion This case involves purely *31 a question of credibility. The witnesses produced on behalf of the Government gave testimony which cannot on any theory be reconciled with that of petitioner. But what imposes most of all upon one's credulity is how a case of this kind could have developed in the way that it did. The claim is that petitioner, who sold used cars to G. & H., a used-car dealer, charged overceiling prices for the cars, received the overage in cash, and failed to report the difference as income. Notwithstanding that the period in issue covers a time when O.P.A. ceilings were not in effect, the claim proceeds further to insist that the same process continued and that a part of the price was thereafter paid by check, the difference in cash, and the overage omitted from petitioner's income. The Government produced but one witness who purported to have personal knowledge that these cash payments were in fact delivered to petitioner. A number of checks were introduced, supposedly representing the overage payments, some of which, it is true, were made out to petitioner. But in each case, including the checks on which petitioner was payee, the endorsements were those of the G. & H. representatives. Petitioner, *32 on the other hand, whose position as a reputable business man and whose apparent record and standing in the community seem to be impeccable, categorically denied that any of the payments were received by him. If the documentary evidence shows anything, it tends to support his testimony. The nearest thing to corroboration of respondent's witness which the record contains is that of the witness' brother, who testified that he gave his brother the cash with which the payments were to be made. But, more than neutralizing this, a witness who presumably would have been disinterested was not produced by respondent. He was an employee of G. & H. who from time to time was said to have made the payments in place of the primary witness. There is no more than a half-hearted explanation in the record of the failure to produce this witness and perhaps the presumption should be indulged that his testimony, if produced, would be unfavorable to respondent. , affd. (C.A. 10) ; , affirming Tax Court Memorandum Opinion [. *33 The burden of producing him cannot appropriately be placed upon petitioner since he established a prima facie case and the proceedings made it clear that not until the trial was he aware of the basis upon which respondent would make his claim. According to respondent's case, the G. & H. partners, in conspiracy with their accountant, concocted the procedure they claim to have followed in order, on the one hand, to make the payments to petitioner without any discoverable evidence on their books, and, on the other, to have records from which their accountant could properly compute their income. But on his brief "It is admitted by respondent that in some cases the accountant who came in to G. & H. once a month during 1946 and 1947 to 'write up' the prior transactions by making entries in the G. & H. cash book may not have seen the overage checks themselves, and that there may be a few minor discrepancies between the checks and his entries in the G. & H. cash book, which is not in evidence as an exhibit." [Italics added.] Respondent's witness was admittedly a party to a conspiracy. All the evidence, including his admission, supports that statement. Petitioner denies any participation. *34 It seems much more reasonable that the admitted participant in the conspiracy could also be giving false testimony than that the innocent victim was likewise a conspirator. Respondent's witness admittedly participated in the violation of the laws governing O.P.A. Why should he not have been prepared to violate the laws regulating the income tax? And if he in fact paid overceiling prices for automobiles, which he thereafter resold, did he also sell them for overceiling prices or did he sell them at a loss? [1]
A revenue agent also testified on behalf of respondent. But nothing that he said could rise higher than its source, and all his testimony was based upon information furnished by one of the witnesses already mentioned or by the purported records which G. & H. kept. Admittedly no complete examination was made of the books of G. & H., and astonishing as it may seem, *35 respondent appears to have accepted at their face value without corroboration all statements made by the G. & H. partner. Obviously, if the payments were not made as testified, the partnership's cost of goods sold was inflated, and they, and not petitioner, failed to report their full income. Yet apparently no deficiency has ever been determined against them and no proceedings against them have been commenced or are in prospect. While this situation is difficult to understand, we are satisfied from the evidence that petitioner's testimony is true and that his denials are to be believed. Under these circumstances, not only has respondent failed to meet his burden of proof with respect to fraud, but as our findings incorporate, petitioner's burden of disproving the existence of any deficiencies has been amply sustained. At the hearing respondent conceded that there were no deficiencies or additions to the tax due from petitioner's former wife, Elsie Boettcher. It is conceded by petitioner that certain adjustments as to deductions were correct, and by respondent that such items do not give rise to any charge of fraud. To take account of these matters, Decisions will be entered under *36 Rule 50. Footnotes
1. One of the G. & H. partners testified: "To the best of my belief, the checks * * * were drawn during the OPA days whereby when money was given in cash in excess of the official OPA book price and money received in return when our car was sold in excess of the OPA book price, that was set up in the loan account."↩